IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 5:19CR513 |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES S. GWIN |
| | ) | |
| v. | ) | |
| | ) | |
| JARON KIRKLAND, | ) | RESPONSE TO DEFENDANT'S MOTION |
| | ) | TO SUPPRESS IDENTIFICATION |
| Defendant. | ) | |

Now comes the United States of America, by and through its counsel, Justin E. Herdman, United States Attorney for the Northern District of Ohio, and Damoun Delaviz, Assistant United States Attorney, and hereby submits this response to Defendant Jaron Kirkland's Motion to Suppress Identification. (R. 15: Motion to Suppress, PageID 57-62). For the reasons set forth below, the United States opposes Defendant's Motion and respectfully requests that this Court deny the Motion based on the filings, finding that the identification was not unduly suggestive, and in the alternative, the United States requests that this Court deny the Motion, finding that the evidence establishes that the identification was reliable.

**I.     Facts**

At an evidentiary hearing, the United States expects to establish the following facts.

On May 31, 2019, before 9:06 pm, at twilight, the complainant, who is known to the United States, was walking to his vehicle in Akron, Ohio. The complainant was coming from a family member's home in the area of the intersection of Grace Avenue and Peckham Avenue, a residential area in Akron. As the complainant was walking to his vehicle, he noticed a man, later determined to be Defendant Jaron Kirkland, approach. The complainant thought Defendant

looked suspicious because Defendant was looking around and wearing a jacket or sweatshirt, despite it being early summer and hot.

The complainant entered and sat in the vehicle. Defendant approached and asked the complainant for a cigarette. The complainant told Defendant that he did not have a cigarette. Defendant then said, "Well f*** you," and the complainant replied, "Well f*** you too." At that point, Defendant pulled out a pistol and said "I'll shoot you," to the complainant. The complainant drove away from the area, returned to his residence and called the police.

Two officers from the Akron Police Department ("APD"), travelling in one vehicle, responded to the area of the incident. The officers received information that the suspect was a black male wearing a dark blue jacket and black pants. As the officers were travelling to the area, they noticed Defendant. They also noticed Defendant matched the description of the perpetrator. Defendant was about one-two blocks away from the intersection of the incident and he was walking away from the area. The officers drove up behind Defendant. Defendant turned around, observed the approaching police officers, who were in a marked police vehicle and in full uniform, removed what appeared to be a small pistol from his right side, and threw it into a bush in front of a nearby home. There were no other individuals out on the street at the time. The officers approached Defendant at gun-point and apprehended him. From the bush, the officers recovered a loaded pistol.

Two other APD officers responded to the complainant's home. These officers asked the complainant if he had called police and what had happened. He replied that he had, and he told those officers what had occurred. They asked him if he'd be willing to go look at someone police had stopped, and the complainant agreed. The officers explained that they were going to drive over to Defendant, who matched the description of what the complainant had told the dispatcher,

2

that the complainant wouldn't have to get out of the car, that the police officers would "spotlight him," and that the complainant would only have to tell the officers, "Yes or no." The officers drove the complainant to the area where Defendant was stopped. The complainant was seated in the rear of the police vehicle. The two officers, who initially apprehended Defendant, took Defendant out of their vehicle and stood beside Defendant. The complainant, while still seated in the back of the police vehicle, approximately a few car lengths away from Defendant, was asked, "Is that him?" and responded, "Yeah, that's him." Defendant was later driven to the local jail to be charged and processed, and the complainant was driven back to his home. Nearly all of the foregoing officer interactions with the Defendant and complainant was captured on officer body camera video from four involved officers.

A few days later, a task force officer ("TFO") with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") interviewed the complainant. The interview was audio recorded. The complainant informed the TFO what happened. In addition to the foregoing, the complainant believed that there were street lights in the area of the intersection of Grace Avenue and Peckham Avenue.[1] The complainant also stated that he was approximately 80% certain that Defendant was the individual who had threatened him when he was in his vehicle. The complainant also provided a description of the gun that was pointed at him and also stated that he recognized the clothing Defendant was wearing as well as Defendant's strip of gray hair. The description of the firearm was consistent with the pistol that was recovered, and the features of Defendant that the complainant pointed out were consistent with the Defendant's appearance on the night of his arrest.

---

[1] A Google Maps image from July 2011 does reveal a number of street lights at that intersection.

3

**II.     Law and Argument**

    **A.     Due process rights associated with identification evidence.**

The Fifth Amendment prevents individuals from being deprived of life, liberty, or property without "due process of law." The Due Process rights associated with identification evidence were first established in Stovall v. Denno, 388 U.S. 293 (1967). In that case, the Court explained that the concern about police influence—that motivated the decision in other cases that same day to afford defendants the right to counsel at post-indictment lineups—could also support a due process claim. Id. at 302. While acknowledging that there could be such a due process claim in theory, the Court held that there was no such due process violation in that case. The police had brought one individual – the defendant – to a "showup" in the victim's hospital room. The defendant, who was the only African-American in the room at the time of the identification, was presented to the witness while he was handcuffed to a police officer. The witness identified the defendant as the person who assaulted her. Id. at 295. Despite the suggestive nature of the identification process, the Court found that no due process violation occurred. Id. at 302.

Similarly, in Simmons v. United States, 390 U.S. 377 (1968), the defendant was accused of robbing a bank with two other individuals. His picture, shown in various snapshots of him with other suspects, was shown to tellers from the victim bank, who identified him as the robber. Id. at 380-82. After recognizing that photograph identification is not fool-proof, the Supreme Court nonetheless held that it was permissible, and that any danger of misidentification could be lessened by cross-examination. Id. at 384. Further, the Court held that "convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside [based on due process]... only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable

misidentification." Id. The use of multiple snapshots of defendant with other suspects was found not to be unnecessarily suggestive because there was "little chance" that police influence led to a misidentification. Id. at 385.

The standard was refined in Neil v. Biggers, 409 U.S. 188 (1972), and Manson v. Brathwaite, 432 U.S. 98 (1977). The Court in Biggers considered whether exclusion is mandatory when an identification is the product of unnecessary police suggestion, or whether countervailing factors might permit the introduction of that evidence at trial notwithstanding the police suggestion. In Biggers, the victim was assaulted and raped by an unknown individual. She provided a general description to the police, who then arranged multiple lineups or showups at the victim's home and police station over the next several months. She failed to identify any person as her assailant until seven months later, when the police arranged for her to view the defendant, who was in custody on other charges. Finding no suitable fillers for a lineup, the detectives showed the defendant alone to the victim. They ordered the defendant to walk past the victim and say, "shut up or I'll kill you." The victim identified the defendant as her assailant. Biggers, at 193-96. Despite the suggestive nature of the show-up, the Biggers Court held that identifications obtained under suggestive circumstances are not automatically inadmissible. Id. at 199. Instead, district courts were directed to look at the totality of the circumstances to see if, despite the suggestive nature of the identification procedure, the identification was reliable. Id. at 199-200.

Likewise, in Brathwaite, an undercover police officer purchased heroin from an unknown individual. Following the purchase, he described the individual to another police officer. The other officer showed a single picture of the defendant to the undercover officer, who positively identified him as the narcotics dealer. The Supreme Court held that, absent a "very substantial

5

likelihood of misidentification that cannot be addressed by the adversary process," the identification need not be suppressed. Eyewitness identification evidence is probative evidence of guilt, and it may be reliable despite police influence. Brathwaite, 432 U.S. at 112.

In one of its most recent decisions regarding due process and identification, the Supreme Court reiterated its reasoning in Biggers and Braithwaite, stating that "that due process concerns arise only when law enforcement officers use an identification procedure that is both suggestive and unnecessary." Perry v. New Hampshire, 565 U.S. 228, 238-39 (2012). In Perry, the Supreme Court also cautioned against expansive preclusion of identification evidence, stating, "Our unwillingness to enlarge the domain of due process as Perry and the dissent urge rests, in large part, on our recognition that the jury, not the judge, traditionally determines the reliability of evidence." Id., 565 U.S. at 245.

One of the only cases that the United States has identified in which the Supreme Court has ever found a due process violation based tainted identification evidence was Foster v. California, 394 U.S. 440 (1969). In Foster, the only eyewitness to a robbery was first shown a lineup of three individuals, including the defendant. The defendant was substantially taller than the two fillers, and was the only person wearing attire the same as the robber. The witness was unable to positively identify the defendant. Law enforcement officials, at the witness's request, arranged a one-on-one meeting between the witness and the defendant, but the witness was still unsure if the defendant was the robber. Finally, at a second lineup of five people, the defendant was identified as the robber. The defendant was the only person from the first lineup to appear in the second. The facts in Foster are not similar to the present case.

Following these Supreme Court cases, the Sixth Circuit has concluded that, in this context, a "defendant is denied due process 'only when the identification evidence is so

unreliable that its introduction renders a trial unfair.'" United States v. Meyer, 359 F.3d 820, 824 (6th Cir. 2004) (quoting Smith v. Perini, 723 F.2d 478, 482 (6th Cir. 1983)). A district court's admission of identification testimony only violates due process when the pretrial identification procedure was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.'" United States v. Sullivan, 431 F.3d 976, 984-85 (6th Cir. 2005) (quoting Meyer, 359 F.3d at 824); see also United States v. Clark, 319 Fed. Appx. 395, 402 (6th Cir. 2009); Howard v. Bouchard, 405 F.3d 459, 469 (6th Cir. 2005); Ledbetter v. Edwards, 35 F.3d 1062, 1070 (6th Cir. 1994). The jury retains the primary function to determine the ultimate weight to be given to the identification, when, as in this case, the identification procedures do not produce a substantial likelihood of misidentification. Meyer, 359 F.3d at 824.

    The Sixth Circuit follows a two-step analysis to determine the admissibility of identification evidence. Sullivan, 431 F.3d at 985; Meyer, 359 F.3d at 824 (citing Ledbetter, 35 F.3d at 1071-72). The defendant bears the burden of proving, at the first step, that the identification procedure was impermissibly suggestive. Meyer, 359 F.3d at 824; United States v. George, 160 Fed. Appx. 450, 454 (6th Cir. 2005) (determining that defendant, convicted of carjacking, failed to prove that photographic lineup was unduly suggestive and violated due process); Ledbetter, 35 F.3d at 1071. If the defendant meets his burden, then courts move to the second step and evaluate the totality of the circumstances to determine whether the identification nevertheless remains reliable. Id. "The following factors guide the court's reliability analysis: (1) the witness's opportunity to view the criminal at the time of the crime; (2) the witness's degree of attention at the time of the crime; (3) the accuracy of the witness's prior description of the defendant; (4) the witnesses's level of certainty when identifying the defendant at the confrontation; and (5) the length of time between the crime and the confrontation." Meyer, 359

7

F.3d at 824 (citing Biggers, 409 U.S. 188, 199–200; Ledbetter, 35 F.3d at 1071 (applying the Biggers factors)).

Therefore, the admission of eyewitness identification does not violate a defendant's due process rights when the defendant fails to satisfy his burden of proving that the identification procedure was unduly suggestive. If the defendant proves that the identification procedure was unduly suggestive, however, the admission of such evidence, nevertheless, remains constitutionally proper when the totality of the circumstances indicate that the identification was otherwise reliable. Meyer, 359 F.3d at 824.

**B.     The identification procedure here was not unduly suggestive.**

The United States submits that in the instant matter, the post-incident identification procedure was not unnecessarily suggestive. As officers were responding to the area, they observed Defendant. Within minutes of the incident, Defendant was approximately one or two short blocks away from the incident, and he was walking away from the area. Defendant matched the description of the perpetrator that officers received, and despite it being a residential area, there was virtually no one else out on the street at the time of the officers' interaction with Defendant. Prior to the officers interacting with Defendant, he discarded a firearm into a bush from his pocket area.

Moments after Defendant was stopped, the complainant was driven to the area, and from a few car lengths away, the complainant was asked whether Defendant was the perpetrator. At the time of the identification, Defendant was outside of the vehicle, standing near police officers. Earlier, the complainant had been told by officers that all you have to do is tell us, "Yes or no." Implicit in that instruction is that it is possible that the individual stopped was not the perpetrator,

and that the complainant should not feel that it was necessary to positively identify the individual stopped by officers.

Throughout the Supreme Court and Sixth Circuit's due process identification jurisprudence, the first step in the analysis is whether the identification process was "unnecessarily suggestive." The United States submits that in the instant matter, the officers took no steps that were unnecessary, and as a matter of fact, took steps to reduce the suggestiveness (and increase the reliability) of the identification.

The officers removed Defendant from the vehicle prior to the identification. The officers told the complainant that he should indicate "yes or no" whether the person stopped was the perpetrator. The officers stopped an individual who was close to the area of the incident, who matched the flash information relating to the perpetrator, who was walking away from the area, and who discarded a firearm prior of the officers apprehending him. The officers quickly drove the complainant to the area where Defendant was stopped, so as to minimize the amount of time that passed between the incident and the identification. At no point did the officers suggest to the complainant, "That's him," or "We think you'll identify him positively." They did not bring Defendant to the complainant, and instead brought the complainant to where Defendant was stopped.

The United States submits that there is little else the officers could have done in the instant matter in conducting the post-incident identification procedure. Even if the officers had gone door to door to find fillers to pose alongside Defendant during the identification, it would have been virtually impossible to find fillers who did not significantly differ in age, race, complexion, height, and weight from Defendant. As such, the conduct by the police officers on

the night of the incident was consistent with Supreme Court and Sixth Circuit jurisprudence, consisting of measures that were neither unnecessary nor unduly suggestive.

The United States proffers the four body camera videos, in their entirety, and invites the Court to review the videos in making its assessment.[2]

### C. The identification procedure here was reliable under the totality of the circumstances.

In the alternative, the United States submits that, should the Court find that the identification was unduly suggestive, evidence of the identification should nonetheless be admitted because it was reliable. The United States believes that the foregoing facts – including the four videos – help to establish that the identification was reliable, and that additional facts, which will be established at the evidentiary hearing should it be necessary, will set forth that the identification in this matter was sufficiently reliable to be admissible under the Braithwaite and Biggers factors.

---

[2] The four videos have been available to defense counsel since on or about September 16, 2019. In order to protect the identity and residence of the complainant, only one video has been passed to defense counsel in its entirety. The remaining three videos were made available, beginning on September 16, 2019, to defense counsel to view, and subsequent to conversations with defense counsel, rather than only make the remaining three videos available to defense counsel, the remaining three videos were also passed to defense counsel, but with redactions. Nonetheless, those remaining three videos – in their entirety – have been available to defense counsel.

## III.     Conclusion

In light of the foregoing, the United States respectfully requests that this Honorable Court deny Defendant's Motion to Suppress.

                            Respectfully submitted,

                            JUSTIN E. HERDMAN
                            United States Attorney

By:   /s/ Damoun Delaviz
        Damoun Delaviz (PA: 309631)
        Assistant United States Attorney
        Federal Building
        2 South Main Street, Room 208
        Akron, OH 44308
        (330) 761-0530
        (330) 375-5492 (facsimile)
        Damoun.Delaviz@usdoj.gov

CERTIFICATE OF SERVICE

    I hereby certify that on this 11th day of October, 2019, a copy of the foregoing document was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's system.

                                           /s/ Damoun Delaviz
                                            Damoun Delaviz
                                            Assistant U.S. Attorney