UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------
UNITED STATES, :
: Case No. 5:19-cr-00513-JG
Plaintiff, :
:
vs. : OPINION & ORDER
: [Resolving Docs. 15, 18]
JARON R. KIRKLAND, :
:
Defendant. :
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

On August 28, 2019, the grand jury indicted Defendant on one count of Felon in Possession of Firearm and Ammunition, 18 U.S.C. §§ 922(g)(1), 924(a)(2).[1] On October 1, 2019, Defendant filed a motion to suppress identification evidence.[2] The Government opposed.[3]

On October 24, 2019, the Court held a hearing on the motion.[4] The Court denied Defendant's motion. The Court stated that it would file an opinion discussing the Court's reasoning.[5]

I. Background[6]

On May 31, 2019, near 9:00 P.M., a citizen was in his car when an individual approached his window. The individual asked for a cigarette, and the citizen replied that he did not have one. The two exchanged heated words, then the individual pulled out a firearm and pointed it at the citizen. The citizen drove away and called the police.

---
[1] Doc. 1.
[2] Doc. 15.
[3] Doc. 17.
[4] Doc. 18.
[5] *Id.*
[6] The facts in this section are drawn from testimony at the suppression hearing. *See* Doc. 21.

Akron Police Department's ("APD's") Officer Siegferth and his partner responded to the call. Dispatch described the suspect as a black male in his 30s wearing dark clothing. While driving to the scene, Siegferth observed a man matching this description walking down a nearby street. Siegferth testified that there was adequate light to accurately see the man and that no one else was walking in the vicinity.

After arriving at the scene and not seeing a suspect, Siegferth drove back to where he had seen the man walking down the street. He found Defendant Kirkland less than two blocks away from the location where the firearm had been brandished.

As the officers approached, the officers saw Defendant throw an object into a bush. The officers retrieved a firearm from the bush location and arrested Defendant. Officer Siegferth described the Defendant as wearing a dark sweatshirt and dark sweatpants.

Separately, Akron Police Department Officer Sebastian and Sebastian's partner drove to the citizen-complainant's home and asked the complainant to come with them for a possible identification. Sebastian instructed the complainant to "tell us yes or no" during the identification.

Police Officer Sebastian drove the complainant to Kirkland's arrest scene and stopped his car 30 or 40 feet away from Police Officer Siegferth's police cruiser. The complainant sat in the back of Sebastian's car. Police Officer Siegferth's partner removed Defendant Kirkland from the police cruiser. Siegferth and his partner stood next to Defendant and Sebastian illuminated Defendant with his car's lights. Defendant was handcuffed.

Police Officer Sebastian asked the complainant, "Is that him?" The complainant confirmed the identification. Sebastian asked him a second time and the complainant

again responded with a positive identification. In a later interview, the complainant stated that he was 80% confident that Defendant was the individual who threatened him with a firearm.

Police Officer Siegferth testified that the complainant identified Defendant 20 minutes after Siegferth arrested him.

## II. Discussion

Defendant argues that the "show-up identification was impermissibly suggestive, and violated his Fifth Amendment [Due Process] rights."[7]

"Due process protects the accused against the introduction of evidence from an unreliable identification obtained through unnecessarily suggestive procedures."[8]

The Sixth Circuit applies a two-step analysis to determine whether a show-up identification was impermissibly suggestive.[9] "First, the defendant must show that the identification procedure was unduly suggestive. If the defendant meets this burden, then the court must evaluate the reliability of the identification in the totality of the circumstances."[10]

Defendant argues that he need not identify how his identification was unduly suggestive because show-up identifications are "inherently suggestive." The Court disagrees.

Show-up identifications are not, *per se*, unduly suggestive.[11] The Sixth Circuit has

---

[7] Doc. 15.
[8] *Lamping v. Michigan*, No. 12-11805, 2013 WL 3946047 at *3 (E.D. Mich. July 31, 2013) (citing *Moore v. Illinois*, 434 U.S. 220, 227 (1977)).
[9] *United States v. Sullivan*, 431 F.3d 976, 985 (6th Cir. 2005).
[10] *Id.* (citing *Ledbetter v. Edwards*, 35 F.3d 1062, 1071-72 (6th Cir. 1994)).
[11] *See Barner v. Maclaren*, No. 16-2069, 2017 WL 3221715 at *3 (6th Cir. March 18, 2017) ("[T]he 'show-up' . . . was not unduly suggestive."); *see also*, *Neil v. Biggers*, 409 U.S. 188, 198 (1972) ("[T]he admission of evidence of a showup without more does not violate due process."); *United States v. Adoma*, 781 F. App'x 199, 204-05 (4th Cir. 2019)

noted that such identifications are "actually consistent with good police work."[12] These identifications "are essential to free innocent suspects and to inform the police if further investigation is necessary."[13]

While all show-up identifications are suggestive, Defendant's show-up identification was not unduly suggestive.

The officers who brought the complainant to the arrest scene did not say anything to suggest that Defendant was the individual who pulled a firearm on complainant. The officers merely asked the complainant if Defendant Kirkland was the same person by stating yes or no.

While Defendant remained handcuffed and in policy custody during the show-up, these "are necessary incidents of an on-the-scene identification that do not render the pre-trial identification procedure unnecessarily suggestive."[14]

Even if Kirkland's show-up was unduly suggestive, the identification was reliable given the totality of the circumstances. The Court weighs five factors to determine an identification's reliability:

> (1) the opportunity of the witness to view the perpetrator during the crime; (2) the witness' degree of attention to the perpetrator; (3) the accuracy of the witness's prior descriptions of the perpetrator; (4) the level of certainty demonstrated by the witness when identifying the suspect; and (5) the length of time between the crime and the identification.[15]

Here, complainant had an opportunity to view the perpetrator when he approached

---

(finding show-up procedure not unduly suggestive); *United States v. Winfrey*, 403 F. App'x 432, 435-36 (11th Cir. 2010) (same); *United States v. Pickar*, 616 F.3d 821, 827-28 (8th Cir. 2010) (same); *United States v. Hawkins*, 499 F.3d 703, 707-08 (7th Cir. 2007) (same); *United States v. Gaines*, 200 F. App'x 707, 711 (9th Cir. 2006) (same).
[12] *United States v. Craig*, 198 F. App'x 459, 466 n.1 (6th Cir. 2006).
[13] *Id.*
[14] *Id.*
[15] *Id.* at 466.

near complainant's car window and asked for a cigarette. The complainant and the perpetrator were close to each other, and enough light illuminated the perpetrator's features.

Complainant's focus would have been on the perpetrator. There was no one else nearby. And the two had a conversation before the perpetrator pointed a firearm at the complainant.

Complainant's prior description of the perpetrator was also accurate. Complainant described the perpetrator as a black male wearing dark-colored sweatpants and a sweatshirt. When the officers apprehended Defendant, he was wearing black sweatpants and a black sweatshirt.

The complainant was also certain of his identification. At the scene he twice stated that Defendant was the same person who had pulled a firearm on him. And complainant later stated that he was 80% confident in his identification.

Finally, little time passed between the crime and the identification. Complainant called the police shortly after the incident, at approximately 9:07 PM. Within about 2 minutes, Officer Siegferth stopped and arrested Defendant. The identification was completed by 9:33 PM. Thus, less than 30 minutes elapsed between the crime and the identification. This limited elapsed time supports complainant's identification as reliable.[16]

The totality of the circumstances surrounding the show-up identification makes the complainant's identification of Defendant reliable. Defendant's identification was not impermissibly suggestive.

---

[16] See id. at 467 (finding identification reliable when it occurred 20 minutes after the crime); see also *Gross v. Warden, Lebanon Corr. Inst.*, 426 F. App'x 349, 366 (6th Cir. 2011) (finding show-up identification reliable when it occurred "only hours after the crime").

Case No. 5:19-cr-00513-JG
Gwin, J.

## ORDER

For the foregoing reasons, Defendant's motion to suppress identification evidence is **DENIED**.

IT IS SO ORDERED.

Dated: January 15, 2020         *s/        James S. Gwin*
                                JAMES S. GWIN
                                UNITED STATES DISTRICT JUDGE